(72 App. Div. 121.)

### VAN PUB. CO. v. WESTINGHOUSE, CHURCH, KERR & CO.

(Supreme Court, Appellate Division, First Department. May 16, 1902.)

**1. SALES—FALSE REPRESENTATIONS—PLEADING.**

A complaint in an action for false representations by a seller is insufficient, in the absence of an allegation that the seller knew the falsity of the representations.

**2. SAME—COMPLAINT—EXISTENCE—SUFFICIENCY.**

Where a complaint may be regarded as one for false representations or breach of warranty, and after the evidence is in, and a motion to dismiss made, plaintiff elects to rely on a breach of warranty, it is error to dismiss the complaint if there is sufficient evidence for the jury on that question.

**3. SAME—COLLATERAL AGREEMENT.**

Where, prior to a formal written contract of sale of a machine, the parties had discussed the advantages of the machine, the statements made by the seller could not be regarded as collateral oral agreements surviving the written contract.

**4. SAME—ACCEPTANCE.**

Where a machine was to be placed by defendant on a foundation, and attached to an electric generator, and the purpose for which it was intended was fully known to both parties, the purchaser could not be said to have accepted it until he had a reasonable time to test its efficiency.

**5. SAME—QUESTION FOR JURY.**

The machine having run for six or eight weeks with the assistance of defendant, but never with entire satisfaction, and a payment made at the end of such period having been on an understanding that the seller would remedy defects, the question whether the purchaser had accepted the machine was for the jury.

**6. SAME.**

The question whether there had been a breach of the implied warranty that the machine was fit for the work on hand was for the jury.

**7. IMPLIED WARRANTY.**

On the sale of a chattel, the implied warranty that it is fit for the use intended does not survive acceptance.

**8. EXPRESS WARRANTY.**

Where a contract of sale of a machine provides that it shall be equipped with a suitable "air starting device," but the evidence in an action for breach of warranty showed that it was difficult, even with the assistance of the seller's own men, to start the machine, the jury was warranted in finding a breach of the warranty as to the starting device.

Van Brunt, P. J., dissenting.

Appeal from special term, New York county.

Action by the Van Publishing Company against Westinghouse, Church, Kerr & Co. From a judgment for defendant, plaintiff appeals. Reversed.

The action was brought upon the following complaint:

"(1) That at the times hereinafter mentioned said plaintiff was, and now is, a domestic corporation, organized and existing under the laws of the state of New York. (2) Upon information and belief, that said defendant was at said times hereinafter mentioned, and now is, a foreign corporation organized and existing under the laws of the state of New Jersey. (3) That heretofore, and prior to March 1, 1898, said defendant, after examination and inspection of plaintiff's printing plant and premises at No. 254 West Fifty-Fourth street, in the city of New York, made certain representations in regard to an engine, which said plaintiff, relying upon said representations and believing the same to be true, purchased from said defendant on or about said last-mentioned date, and paid the sum seventeen hundred and twenty-

seven dollars and forty-five cents. (4) That the said representations so made as aforesaid were, in substance and effect, that the cost of running said engine to produce the electrical power required for the aforesaid printing plant would be less than the cost of such electrical power if supplied by a direct current from the street lines supplying the same; that the power so supplied by said engine would equal 30 brake horse power, and would be more than sufficient to run said plant; and that said engine was well made, reliable, and efficient for the purpose for which plaintiff proposed to use the same. (5) That, relying upon said representations, which were material thereto, and believing the same to be true, said plaintiff purchased said engine as aforesaid, together with the electrical machinery and apparatus necessary to use the same, constructed a foundation therefor in accordance with said defendant's instructions and specifications, and installed said engine, machinery, and apparatus upon plaintiff's said premises, at a further and additional cost to plaintiff of fifteen hundred and two dollars and five cents. (6) That the cost of running said engine was more than the cost of electrical power supplied by a direct current from the said street lines; that the power supplied by said engine under the most favorable conditions amounted to less than 30 brake horse power; that said engine was not well made, reliable, or efficient for the purposes for which plaintiff proposed and attempted to use the same; that said engine eventually, and after inspection and repairs by defendant, broke down, wrecking the plunger or piston in one of its three compartments, and stopping the operation of said plaintiff's said plant, to plaintiff's great loss and damage; that said use or attempt to use said engine caused damage to the adjoining property owners of said plaintiff amounting to sixty-five dollars and eighty-seven cents, which damages said plaintiff has paid; that said representations by said defendant were false and untrue. (7) That said plaintiff has heretofore notified said defendant of the falsity of said representations, tendered back to said defendant the engine so purchased as aforesaid, and demanded repayment of said purchase price, and payment of damages incurred and expended by said plaintiff by and on account of said purchase and attempted use of said engine, machinery, and apparatus, which tender and demand have been refused. Wherefore said plaintiff demands judgment against said defendant for the sum of thirty-five hundred dollars, with interest thereon from the 1st day of March, 1898, together with the costs of this action."

The answer admitted the sale of the engine, denied other allegations, and alleged that there was a written contract of sale, which was duly carried out. The paper thus referred to was in the form of a proposal from the defendant, accepted by plaintiff, as follows:

"New York, Feb. 26th, 1898.

"To the Van Publishing Company, 254 West 54th Street, City—Gentlemen: We hereby propose to furnish you, delivered on foundation, which you will supply, the following gas engine: One three-cylinder Westinghouse vertical gas engine. * * * With it we will supply one cast-iron bed plate; * * * suitable air starting device, consisting of air pump and air-storage tank, electric ignitors, and battery of six jars for spark ignition; gas regulator; full set of wrenches and fittings, and plans for foundation. This engine, when running at its normal speed of 375 r. p. m., and a good quality of gas, will develop 30 brake horse power. * * * Our price for the above outfit * * * is $1,825. Terms, net cash thirty days, * * * or less 2% for cash. * * *                     Westinghouse, Church, Kerr & Co.

"Jas. W. Wilson.

"Accepted March 2, 1898.
"Van Publishing Co.
        "Dillon Brown, Pres."

Mr. Brown, plaintiff's president, related the statements made to him by defendant's agent prior to the execution of the written proposal, and testified that, after the engine was put in, it ran fairly well for six weeks, except the defendant's men would come up occasionally as it would get stalled; and a check was then sent in payment, as "they constantly said they would fix it, and, of course, I supposed it would be all right"; that the

difficulty, however, increased, it being almost impossible to get the machine started, and the defendant's men were constantly at work upon it, because of this trouble, down to the time when, about three months later, it finally exploded. At the close of the plaintiff's case the defendants moved to dismiss on the ground that an action for false representations was not proved, whereupon plaintiff's attorney disclaimed that such a cause of action was alleged, and asserted that the action was for breach of warranty. The court then said: "Taking the allegations of the complaint in that view, there is not a cause of action here, because the representations as to these particulars * * * are simply matters of opinion, * * * and there is no allegation anywhere of any warranty, or any intention to warrant; and the written contract is in evidence, which shows what the contract was between the parties; and I think that under the circumstances in the case the plaintiff was bound by the contract, and the motion to dismiss must be granted." The plaintiff then asked to go to the jury upon the question of false representation, but the court stated that there was not sufficient proof to raise the question for the jury, and granted the motion to dismiss, to which ruling an exception was taken. From the judgment entered dismissing the complaint, the plaintiff appeals.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

John A. Straley, for appellant.
Arthur J. Baldwin, for respondent.

O'BRIEN, J. The complaint is insufficient in averring a cause of action for false representations, because there is no allegation that the defendant knew of the falsity of the representations. Brackett v. Griswold, 112 N. Y. 467, 20 N. E. 376. Excepting this omission, all the averments of an action in tort for deceit were alleged, and there are no formal allegations of breach of warranty. Upon the trial, moreover, the plaintiff expressly disclaimed any intention of recovering upon the theory of deceit or false representations, and insisted that the action is one for breach of warranty. Considering the action, however, from the standpoint of plaintiff's own construction, and in view of the evidence admitted, it still remains to be determined whether, at the close of plaintiff's case, a dismissal of the complaint was justified. The defendant could have compelled the plaintiff to elect, at the beginning of the trial, whether he would stand on deceit or breach of warranty. The evidence, however, was received, and it was only after the motion to dismiss was made that plaintiff elected to stand upon the breach of warranty, and, if there was sufficient to go to the jury upon that question, it was error to dismiss the complaint. Without repeating the various representations, which plaintiff insists were in the nature of warranties, it is sufficient to say that all were made prior in point of time to the execution of the written agreement of purchase and sale, and many were mere expressions of opinion, and none survived the signing of the contract. As said in Machine Co. v. Lighthouse, 64 App. Div. 142, 71 N. Y. Supp. 802:

"That oral evidence is not admissible to vary the written engagement of the parties to it, where it is their entire agreement, is elementary; but the exception is apparently as well established that an independent collateral agreement, not contained in the writing, can be shown by parol."

Although it is entirely competent, therefore, where the written agreement is not complete, and does not embody the entire understanding between the parties, to prove an oral collateral agreement not inconsistent with the written, the rule does not go so far as to permit prior oral negotiations to be introduced in evidence for the purpose either of supplementing or contradicting the formal written contract. Here it is not claimed that at the time the formal proposal to sell the machine was made and accepted any other or different agreement than that embodied in the writing was made, all that appears being that prior to that time there had been some conversations between persons respectively representing the plaintiff and defendant as to the character and advantages of the machine, and these, it was insisted, were collateral oral warranties. To regard these oral negotiations, prior in point of time, as collateral oral agreements which survived the written contract and were not merged therein, would be going further than any reported decision. These statements were not cotemporaneous, but were prior in point of time, and, as they were not alluded to when the contract in writing was made, they were no part thereof, and under the well-settled rules must be regarded as merged in the contract. The evidence, moreover, as bearing upon the intention of the parties, shows that, after the preliminary negotiations were had wherein the alleged representations were made, the defendants stated that they would make a formal proposal in writing, which they did; and this, being accepted, must be regarded as embodying the contract of the parties. The theory, therefore, of a parol collateral agreement has no basis upon which to rest.

With respect, however, to the written agreement, there are two classes of warranty, one implied and the other express, which need to be briefly considered. The purpose for which the engine was required was fully understood between the parties; and in describing its component parts and its capacity there was necessarily included the implied warranty that it should be, when delivered, reasonably fit and suitable for the work in hand. Such implied warranty would not survive acceptance. Here, however, the machine was to be placed in position on a foundation built for it according to plans furnished by the defendant, and then attached to a Bullock electric generator, in order to run the motors. Before plaintiff, therefore, could be said to have accepted the engine, it was entitled to have an opportunity to observe its efficiency, and a sufficient time to test it, and determine whether it was reasonably fit for the purpose for which, as understood by the parties, it was intended. It further appears that the machinery was put in position, and, with the assistance of the defendant from time to time, for six or eight weeks it continued to run the motors, but never with entire satisfaction; and it nowhere appears that there was an unconditional acceptance. The payment made at the end of that period was, as expressly testified, upon reliance that, in the respects in which the engine had shown itself to be deficient, it would be fixed, and made all right by the defendant. And the defendant's efforts to that end were continued, after the payment, down to the very time when

the engine was destroyed as the result of an explosion. We think, therefore, upon the question as to whether or not there was an acceptance of the engine,—and, if there was not, whether there was a breach of the implied warranty,—there was sufficient to require a submission of the case to the jury.

Apart, however, from this question of an implied warranty, we have in the contract itself the express warranty that the engine should be equipped with "a suitable air starting device." The words "suitable air starting device" necessarily involved the idea that a contrivance was to be provided that would start the engine; and yet we have an accumulation of evidence tending to show that it was difficult, and at times impossible, even with the assistance of the defendant's own men, to start the machine, although, when started, it worked fairly well. Hence it would not have been a forced inference had the jury concluded that there was not furnished a "suitable air starting device." Regarding the complaint, therefore, as one for breach of warranty, there was sufficient evidence to go to the jury; and it was error to dismiss the complaint.

The judgment accordingly should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur, except VAN BRUNT, P. J., dissenting.